[Cite as *State v. Myers*, 2014-Ohio-3759.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                                    Court of Appeals No. WD-13-048

      Appellee                                         Trial Court No. 11 CR 364

v.

Craig Myers                                                    **DECISION AND JUDGMENT**

      Appellant                                        Decided:  August 29, 2014

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Aaron T.
Lindsey and David E. Romaker Jr., Assistant Prosecuting
Attorneys, for appellee.

David Klucas, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Following a jury trial, defendant-appellant, Craig Myers, appeals the

July 10, 2013 judgment of the Wood County Court of Common Pleas convicting him of

assault and abduction of the victim, J.S. For the following reasons, we affirm the trial court's judgment.

## I. Factual Background

{¶ 2} On the evening of July 15, 2011, J.S., of Marion, Ohio, drove to Craig Myers' home in West Millgrove, Ohio, for dinner. The two had been in an on-and-off-again relationship for approximately a year-and-one-half. The relationship was strained, and the couple had discussed attending counseling together but had taken no action.

{¶ 3} After dinner that evening, Myers and J.S. began discussing their relationship. According to J.S., she told Myers that their relationship was over and that counseling would not alter her decision. Myers began yelling and became verbally abusive. J.S. attempted to leave, but Myers took her car keys and blocked the house exits. She yelled for help and begged Myers for several hours to let her go. During the altercation, J.S. claims that Myers held her by the throat and threw her against the wall and to the floor multiple times. When she tried to escape, he closed the back door on her leg and hand. J.S. testified that their physical and verbal altercation spanned several hours.

{¶ 4} According to J.S., after hours of verbally and physically struggling with Myers, she consciously changed her approach. Rather than aggressively trying to leave, she became passive. She allowed Myers to escort her to his bedroom whereupon he undressed her and had sex with her. Afterwards, J.S. testified that Myers calmed down and fell asleep.

2.

{¶ 5} At approximately 2:00 a.m. on the morning of July 16, 2011, J.S. woke Myers and requested her keys. He voluntarily returned them, and she left. J.S. drove home, showered, and then went to Marion General Hospital's emergency department. She complained of a headache, as well as pain in her right shoulder, neck, chest, and right arm. Upon examination, she was found to have multiple bruises, contusions, and abrasions on her arms, legs, and chest. She reported the incident to the Wood County sheriff's office that same morning.

{¶ 6} The state charged Myers with felonious assault, under R.C. 2903.11(A)(1), and abduction, under R.C. 2905.02(A)(2). The case went to a jury trial on May 8, 2013. At trial, several witnesses were called, including Katherine Mull, a licensed social worker from the Cocoon Shelter, a domestic violence victims' advocacy organization. Over the objection of the defense, the court permitted Mull to provide testimony describing battered-woman syndrome (BWS), the cycle of violence, and how it affects the behavior of an abused woman. The jury ultimately convicted Myers.

{¶ 7} Myers timely filed this appeal, assigning the following errors for our review:

1. The trial court committed reversible error by admitting into evidence the testimony of Katherine Mull.

2. The verdict was against the manifest weight of the evidence.

3.

## II. Law and Analysis

### A. First Assignment of Error

{¶ 8} In his first assignment of error, Myers argues that the court erred in admitting Mull's testimony regarding BWS. He claims that the testimony was irrelevant and prejudicial given the absence of testimony indicating that J.S. had been the victim of abuse before the incident at issue in this case. He also claims that Mull's testimony lacked any real indicia of scientific reliability. The state contends that the admission of Mull's testimony was appropriate because her testimony aided the jury by clarifying common misconceptions, was limited to general information, and did not provide conclusions regarding the ultimate issue of the case. The state, furthermore, contends that even if Mull's testimony was improperly admitted, the trial court's admission of the testimony constituted harmless error.

{¶ 9} When reviewing a trial court's decision to admit or exclude evidence, the court utilizes an abuse of discretion standard of review. The trial court generally "has broad discretion in ruling on evidentiary matters." *State v. Richardson*, 6th Dist. Lucas No. L-07-1214, 2010-Ohio-471, ¶ 54, quoting *State v. Bruce*, 8th Dist. Cuyahoga No. 92016, 2009-Ohio-6214, ¶ 54. To find an abuse of discretion, the court must find that the trial court made more than a mere error of law or judgment but, rather, its decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

4.

{¶ 10} In *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), the Ohio Supreme Court first recognized the validity of expert testimony on BWS. It explained that in cases where a woman is claiming self-defense, this type of expert testimony "can be admitted to help the jury not only to understand [BWS] but also to determine whether the defendant had reasonable grounds for an honest belief that she was in imminent danger." *Id.* at 216. The court reasoned that BWS testimony is sometimes needed because it is "an area where jurors' logic, drawn from their own experience, may lead to a wholly incorrect conclusion [and] an area where expert knowledge would enable the jurors to disregard their prior conclusions as being common myths rather than common knowledge." *Id.* at 217. Essentially, the admission of BWS expert testimony is to assist the trier of fact in drawing the proper conclusions. *Id.*

{¶ 11} Later, in *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 42-43, the court reaffirmed its holding in *Koss* and specifically held that the state, as well as defense counsel, may introduce BWS expert testimony when the testimony is both relevant and not unduly prejudicial. BWS expert testimony is relevant when a complainant's inconsistent actions raise the issue of credibility, such as where the complainant has endured prolonged periods of physical abuse "accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting allegations of abuse." *Id.* at ¶ 44. BWS expert testimony is not relevant if there is no "evidentiary foundation that [the complainant] is a battered woman [and] has behaved in such a manner that the jury would be aided by expert testimony providing an explanation for the

behavior." *Id.* at ¶ 46. Before BWS testimony will be admitted, an appropriate evidentiary foundation must first be established, indicating (1) that the complainant experienced the typical cycle of violence associated with battered relationships at least twice, and (2) that she reacted in a manner consistent with that of a battered woman. *Id.* at ¶ 47-49.

{¶ 12} The cases decided since *Haines*, including cases decided by this court, have strictly followed *Haines* in requiring that the complainant experience the cycle of violence twice in order to be classified as a battered woman. *See*, *e.g.*, *State v. Caudill*, 6th Dist. Wood No. WD-07-009, 2007-Ohio-1557, ¶ 40; *State v. Drew*, 10th Dist. Franklin No. 07AP-467, 2008-Ohio-2797, ¶ 49-50; *State v. Frazier*, 9th Dist. Summit No. 25654, 2012-Ohio-790, ¶ 60; *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 20-21; and *State v. Sorah*, 12th Dist. Clermont No. CA2006-08-056, 2007-Ohio-5898, ¶ 31-32. Myers argues that the state failed to establish that J.S. twice experienced the cycle of violence, thus, the court erred in allowing Mull's testimony. We agree.

{¶ 13} J.S. testified that she was fearful of Myers, however, she made clear that before the July 15, 2011 episode, he had never been physically abusive. She testified that Myers was persistent in texting her, calling her, and tracking her whereabouts, but she indicated that she never believed he would physically touch her, that she was not fearful that night, that she had "never in [her] life been in that position before," and that she was especially shocked by his behavior that evening because he had never before been violent. Accordingly, the prosecution did not lay the proper evidentiary foundation to

6.

classify J.S. as a battered-woman as required under both *Koss* and *Haines*, and Mull's testimony should have been excluded.

{¶ 14} Having determined that the court erred in allowing Mull's testimony, we must determine whether that error was harmless beyond a reasonable doubt. This "is not simply an inquiry into the sufficiency of the remaining evidence," but a question "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78.

{¶ 15} In *Haines*, the court found that the expert testimony about BWS exceeded the bounds of permissible expert testimony because the expert directly testified that the behavior at issue in the case was consistent with BWS and that in his opinion, the abuse at issue had occurred. By describing the victim as a battered woman and by making credibility determinations as to the victim's account of the abuse, the court explained, the expert essentially concluded that the defendant was a batterer, thereby resulting in prejudice to the defendant and usurping the jury's role as fact-finder. *Haines* at ¶ 55. The court determined that certain limits must be placed on the testimony of a BWS expert so as to avoid unfair prejudice to the defendant. It explained:

> The rule in most jurisdictions is that general testimony regarding battered-woman syndrome may aid a jury in evaluating evidence and that if the expert expresses no opinion as to whether the victim suffers from battered-woman syndrome or does not opine on which of her conflicting

7.

statements is more credible, such testimony does not interfere with or impinge upon the jury's role in determining the credibility of witnesses. * * * "[E]xperts who are called to testify in domestic violence prosecutions must limit their testimony to the general characteristics of a victim suffering from the battered woman syndrome. The expert may also answer hypothetical questions regarding specific abnormal behaviors exhibited by women suffering from the syndrome, but should never offer an opinion relative to the alleged victim in the case." (Internal citations omitted.) *Id.* at ¶ 56.

{¶ 16} Having concluded that the expert's testimony exceeded these limitations, the court was left to determine whether the error in allowing the expert's opinions constituted harmless error. The defendant had been convicted of six offenses relating to two separate incidents. He was charged with three crimes as to each incident. The court ultimately concluded that as to the charges emanating from the second, the error in admitting the BWS testimony was harmless. As to the first incident, the court reached the opposite conclusion. It made this distinction because with respect to the first incident, the evidence was based almost entirely on the victim's testimony. *Id.* at ¶ 64. She did not report the incident for weeks and she continued to reside with the defendant after the incident. *Id.* The court reasoned that the evidence concerning her credibility may have contributed to the jury's verdict. *Id.* With respect to the second incident, the evidence

8.

was more varied and "[j]urors were not confronted with questions about why [the victim] had not reported the incident, as they were with the [previous] incident." *Id.*

{¶ 17} Applying the supreme court's rationale to the facts of this case, we find that the trial court's error in admitting Mull's testimony was harmless. Mull's testimony was general in nature. While J.S.'s account of the events was essential to the state's case, the ultimate issue of her credibility was left entirely to the jury. Mull rendered no opinions as to J.S.'s credibility, whether the abuse had occurred, or whether J.S. was, in fact, exhibiting characteristics of a battered woman. Moreover, the state presented evidence which corroborated J.S.'s testimony.

{¶ 18} For example, the state presented photographs taken at Marion General Hospital which depicted J.S.'s injuries. It also presented her medical records and testimony from a number of witnesses, including the nurse who treated her immediately following the incident and the deputy who took J.S.'s report later that morning. The nurse testified to the nature and extent of J.S.'s injuries, many of which she believed to have been recently inflicted, and she described J.S. as "emotionally upset" and uncomfortable. She recounted what J.S. had told her during the examination as to how she sustained the injuries, and that account was consistent with J.S.'s testimony at trial. The sheriff's deputy also testified to the presence and freshness of J.S.'s injuries, J.S.'s demeanor, her investigation of the incident, and her decision to press forward with the charges against Myers. Also, because some of J.S.'s injuries required continuing treatment, the state also presented testimony from J.S.'s orthopedic surgeon, who testified

9.

that J.S. suffered a labral tear to her shoulder which he concluded had been caused by traumatic injury and which required surgery. J.S.'s physical therapist, whom she began seeing within a few weeks of the incident, also testified and described J.S.'s injuries and her ongoing pain.

{¶ 19} The testimony of these witnesses, the photographs, and the medical records, coupled with J.S.'s detailed account of what happened that night, provided strong evidence against Myers. Mull's testimony describing the characteristics and behavior of battered women was broad and general and in no way specific to the facts of this case. *See also State v. Renner,* 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 88; *Frazier*, 9th Dist. Summit No. 25654, 2012-Ohio-790 at ¶ 63; and *State v. Anderson,* 9th Dist. Summit No. 25377, 2011-Ohio-563, ¶ 17. We, therefore, conclude that there is no reasonable possibility that Mull's testimony contributed to Myers' conviction and admission of her testimony constituted harmless error.

{¶ 20} We find Myers' first assignment of error not well-taken.

### B. Second Assignment of Error

{¶ 21} In his second assignment of error, Myers contends that the jury's verdict was against the manifest weight of the evidence.

{¶ 22} A challenge to the manifest weight of the evidence questions whether the state has met its burden of persuasion. The appellate court sits as a "thirteenth juror" and may review the entire record, weigh the evidence and make all reasonable inferences, and consider witness credibility. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541

(1997). The appellate court determines whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and new trial ordered." *Id.*, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Manifest weight errors are found only in exceptional cases where the evidence weighs heavily against conviction. *Id.*

{¶ 23} Myers contends that there was no evidence to support J.S.'s claim that she was assaulted and abducted. He claims that the photographs admitted at trial reveal no abrasions to J.S.'s face despite her claim that Myers slammed her face-first into the wall multiple times. He also claims that the testimony of his former neighbors, Christie Kapelka and Nikki Lafferty, undermined J.S.'s credibility.

{¶ 24} With respect to his neighbors' testimony, Kapelka, who lived three houses from Myers, testified that she drove by Myers' home around 8:30 p.m. that evening and observed J.S. and Myers enjoying themselves outside. She claimed that she heard no yelling or screaming coming from Myers' home that night. Lafferty, also a neighbor of Myers, testified that the blinds at Myers' house were open that night and she could see J.S. She denied that J.S. appeared to be in any distress, or that she had heard any screaming that night. Lafferty also indicated that she had taken care of Myers' dog in the past and that the dog often barks around strangers or when something unusual has occurred. She testified that she heard no barking, but conceded that J.S. would not have been a stranger to the dog.

11.

**{¶ 25}** With respect to the absence in the photographs of visible injuries to J.S.'s face, defense counsel did not specifically inquire of the witnesses whether they observed redness on J.S.'s face. He did, however, ask the nurse and the sheriff's deputy a number of questions about whether there appeared redness around J.S.'s neck given her claim that Myers had grabbed her by the throat. Briefly summarizing, the witnesses essentially testified that sometimes red marks appear and sometimes they do not.

**{¶ 26}** Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. Here, the jurors saw the pictures and heard the witnesses' testimony and were free to draw their own conclusions about J.S.'s credibility based on the totality of the evidence. According to its verdict, the jury apparently found J.S.'s account of the incident to be credible and was not persuaded that the incident did not occur merely because the photos did not demonstrate injuries to her face or because Kapelka and Lafferty heard no screams or barking coming from Myers' home. We will not disturb the jury's findings.

**{¶ 27}** Because Myers has not established that the state failed in its burden of persuasion or that the jury clearly lost its way, we find his second assignment of error not well-taken.

12.

### III. Conclusion

**{¶ 28}** We find Myers' two assignments of error not well-taken and we affirm the July 10, 2013 judgment of the Wood County Court of Common Pleas. The costs of this appeal are assessed to Myers in accordance with App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.