[Cite as *State v. Johnson*, 2014-Ohio-4339.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-13-1032

        Appellee                                Trial Court No. CR0201202149

v.

Steven Johnson                              **DECISION AND JUDGMENT**

        Appellant                               Decided:  September 26, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of two counts of felonious assault with attached firearm specifications and imposed a term of imprisonment.  For the following reasons, the judgment of the trial court is affirmed.

{¶ 2} This case originated in the Lucas County Court of Common Pleas, Juvenile Division, where appellant was charged as an alleged delinquent child in connection with a shooting which occurred on March 18, 2012, in Toledo, Lucas County, Ohio. Appellant was 17 years of age at the time of the incident, but turned 18 in May 2012. On June 21, 2012, the juvenile court granted the state's motion for relinquishment of jurisdiction, certified appellant to be tried as an adult, and transferred the case to the Lucas County Court of Common Pleas, General Division.

{¶ 3} In July 2012, appellant was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2) and one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161, all of which carried firearm specifications pursuant to R.C. 2941.145. Before trial, the third count was nolled.

{¶ 4} On September 26, 2012, appellant filed a motion to suppress his identification by several witnesses by means of a photo array. At the conclusion of an evidentiary hearing held on October 15, 2012, the trial court denied the motion. The case proceeded to a jury trial.

{¶ 5} On October 16, 2012, the jury found appellant guilty of both counts of felonious assault and both attached firearm specifications. At sentencing, the trial court ordered appellant to serve a three-year term of imprisonment for each count of felonious assault, with the sentences to be served concurrently. The trial court merged the two firearm specifications and ordered appellant to serve the mandatory three-year term consecutive to the sentence for the felonious assault convictions.

2.

{¶ 6} Appellant now files the following assignments of error:

A. The trial court erred by not suppressing the photo array because the array violated R.C. 2933.83 and was unduly suggestive.

B. The State of Ohio failed to produce legally sufficient evidence to sustain a conviction.

C. Appellant's conviction fell against the manifest weight of the evidence.

{¶ 7} In support of his first assignment of error, appellant asserts that the trial court erred by not suppressing the photo array shown to three witnesses because the array violated R.C. 2933.83 and was unduly suggestive.

{¶ 8} We note first that appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate witness credibility. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). A disputed motion to suppress judgment supported by competent, credible evidence must not be disturbed. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

{¶ 9} R.C. 2933.83, effective July 2010, requires any law enforcement agency that conducts live and photo lineups to adopt "specific procedures" for conducting the lineups. R.C. 2933.83(B). Such procedures must provide, at minimum, the use of a

3.

"blind or blinded" administrator for the array.  *Id.* at 2933.83(B)(1).  Blind or blinded administrators are defined in R.C. 2933.83(A) as follows:

> (2) "Blind administrator" means the administrator does not know the identity of the suspect.  "Blind administrator" includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system.  (3) "Blinded administrator" means the administrator may know who the suspect is, but does not know which lineup member is being viewed by the eyewitness.  "Blinded administrator" includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system.

{¶ 10} The folder system set forth in the statute provides for the suspect's photograph, five filler photographs and four dummy folders.  The folders are shuffled and the administrator does not know which folder the witness is viewing.  R.C. 2933.83(A)(6).  The statute does not require the use of the folder system.

{¶ 11} The statute provides that evidence of noncompliance with the statute shall be considered by courts in ruling on a defendant's motion to suppress.  R.C. 2933.83(C)(1).  In addition, such evidence is admissible at trial.  R.C. 2933.83(C)(2).  If such evidence is admitted at trial, the court shall instruct the jury that such noncompliance may be considered in determining the credibility of the witness identification.  R.C. 2933.83(C)(3).

4.

{¶ 12} The trial court in this case found that the administration of the arrays was substantially in conformance with R.C. 2933.83 and that the testimony of the three eyewitnesses was "absolutely reliable." At the October 15, 2012 suppression hearing, Toledo Police Detective Steve Applin testified as to the lengths to which he went to create a photo array that portrayed individuals with the same characteristics and approximate age, that was not in any way suggestive. Further, Applin testified that although he assembled the photo array, it was administered by Detective Gene Kutz, who did not know the identity of the suspect. Therefore, Detective Kutz was a "blind administrator" as defined by R.C. 2933.83.

{¶ 13} Assuming arguendo that the identification procedures herein did not comply with the statute, such non-compliance does not provide an independent basis for suppression. *See State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5522, ¶ 46. As will be discussed below, while non-compliance is to be taken into consideration by the trial court when ruling on a motion to suppress, it does not necessitate that the court suppress the identification. *Id.* The overriding analysis remains whether the identification procedure was "impermissibly suggestive." *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 14} Appellant argues that the array was unduly suggestive because the photo of his face was substantially larger than the other photos, that Detective Applin acknowledged "purposely blurring" the filler photos, and because in the BMV photo used he is wearing glasses although none of the witnesses described him as wearing glasses.

5.

These minor variations, which primarily related to details of appearance that may be readily changed, do not require a finding that the array was impermissibly suggestive. The array in this case depicted five Caucasian men of approximately the same age. Each was wearing glasses of a similar type, with similar hair styles and facial hair. Because the array included individuals "showing no significant variations in hair length, complexion, age, features, or dress," the array was not unduly suggestive. *See State v. Thomas*, 8th Dist. Cuyahoga No. 88548, 2007-Ohio-3522, ¶ 14.

{¶ 15} Denying the motion to suppress, the trial court found that appellant failed to meet his burden to demonstrate that the procedure used in compiling and showing the array to the victims was unduly suggestive. Upon review of the trial court's finding, we find that no error occurred. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 16} In support of his second assignment of error, appellant asserts that the state failed to produce legally sufficient evidence as to each element of the offense of felonious assault. In support of his third assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence. These arguments will be considered together as both can be resolved by examining the evidence presented at trial.

{¶ 17} The term "sufficiency" of the evidence presents a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541(1997). The relevant inquiry in such cases is "whether, after viewing the evidence in a light most favorable to

6.

the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} "In contrast, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Davis*, 6th Dist. Wood No. WD-10-077, 2012-Ohio-1394, ¶ 17, citing *Thompkins, supra*, at 387. In making this determination, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins, supra*, at 386.

{¶ 19} Appellant was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(2), which states: "No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance."

{¶ 20} The jury in this case heard testimony on behalf of the state from three witnesses to the crime, the responding officer and two detectives. The defense presented one alibi witness.

{¶ 21} Detectives Applin and Kutz each testified at length as to assembling and presenting the photo array to the witnesses, as summarized above. Next, the state

7.

presented the testimony of victims Mark Bollinger and Mia Biggert, as well as witness Kaleigh Rains.

{¶ 22} Biggert testified as to the events of the early morning hours on March 18, 2012. Biggert was staying at the home of her friend Kaleigh Rains and Rains' brother Mark Bollinger. At approximately 4:00 a.m., after Bollinger returned to the duplex, Biggert and Rains went outside to have a cigarette. While the two women were on the porch, they observed three males walk by the house and then turn around. One of the males said something the women did not hear. Rains asked them what they had said and one of the males asked her what she was looking at. At that point, Biggert testified, the men approached them and it became clear "they were going to beat our asses." Rains then went inside to get her boyfriend, who in turn got Bollinger to go outside. Bollinger walked toward the three males and one of them shot him with pepper spray. Biggert identified appellant as the individual with the pepper spray. After the male pepper-sprayed Bollinger, he fired two gunshots in the air and then immediately fired five times at Bollinger.

{¶ 23} Mark Bollinger testified that, after spending the evening of March 17, 2012, with friends and family, he returned to his apartment at about 4:00 a.m. Shortly thereafter, he heard commotion and pounding on his door. He looked outside and saw three men approaching his sister and her friend and screaming at them. Bollinger ran outside and saw the three men standing on the grass in front of the house. When Bollinger told the individuals to leave, one of them pulled out a can of pepper spray and

8.

shot him in the face from about six feet away. Bollinger turned around and backed up, wiping his face and eyes. He testified that although the pepper spray caused the skin on his face to burn, it did not hurt his eyes. He then heard shots fired and turned around and saw an individual he identified in court as appellant shooting a gun in the air. Appellant then started shooting toward Bollinger and Biggert. Bollinger turned away and was struck in the foot by a bullet. He received medical attention for his wound. Bollinger further testified that when he viewed the photo array he was "110 percent" sure the picture of appellant was the same man that shot him.

{¶ 24} Kaleigh Rains testified that Bollinger returned home in the early morning hours of March 18, 2012, and woke her up because she had locked the door. At that point, Rains and Biggert went outside to have a cigarette on the front porch. Rains testified that three males walked past the house once, turned around and walked by a second time, calling out to the women and asking what they were looking at. Words were exchanged and the women told them to leave. When Bollinger went outside, he also told the individuals to leave. As Bollinger stood there, one of the males sprayed pepper spray in his face and then "almost immediately" fired gunshots in the air. Rains testified that when Bollinger turned to walk into the house one of the males started shooting in Bollinger's direction. As Rains called the police on her cell phone, the three men fled down the street and out of sight. Finally, Rains testified that she was "[one] [h]undred and fifty percent sure" appellant was the person who fired the gun that night.

9.

**{¶ 25}** The defense presented the testimony of Beronica Lopez, who stated that appellant was a friend of her daughter's and was living at her house at the time of the shooting. Lopez testified that appellant was with her and several other individuals during the afternoon and evening of March 17, 2012. She testified that she did not go to bed until about 5:30 or 6:00 a.m. the following morning, and that appellant went to bed sometime between 1:00 and 2:00 a.m. She reported that she woke appellant up around 4:00 a.m. and made him move to the living room because he had fallen asleep in her daughter's bedroom, which was not allowed.

**{¶ 26}** This court has thoroughly considered the entire record of proceedings in the trial court and the testimony as summarized above. Bollinger, Biggert and Rains all identified appellant in court as the individual who pepper sprayed Bollinger and fired shots at Bollinger and Biggert. They also verified that on March 22, 2012, they identified appellant in a photo array. All three testified that they were certain of their identifications and confirmed that the detective who presented the array told them the suspect's photo might or might not be included in the array. Additionally, all three witnesses testified that although the confrontation occurred in the early morning hours the area was lighted by streetlights and other outdoor lights.

**{¶ 27}** We find that the state presented sufficient evidence from which, when viewed in a light most favorable to the state, a rational trier of fact could have found appellant guilty beyond a reasonable doubt of felonious assault in violation of R.C.

10.

2903.11(A)(2) and the attached firearm specifications. *See Jenks*, 61 Ohio St.3d 259 at syllabus, 574 N.E.2d 492.

{¶ 28} As this court has consistently affirmed, the trier of fact is vested with the discretion to weigh and evaluate the credibility of conflicting evidence in reaching its determination. It is not within the proper scope of the appellate court's responsibility to judge witness credibility. *State v. Hill*, 6th Dist. Ottawa No. OT-04-035, 2005-Ohio-5028, ¶ 42. Further, based on the testimony summarized above and the law, this court cannot say that the jury clearly lost its way or created a manifest miscarriage of justice by finding appellant guilty of the two charges of felonious assault with firearm specifications. *Thompkins, supra*, 78 Ohio St.3d 380 at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1983). Accordingly, we find that appellant's second and third assignments of error are not well-taken.

{¶ 29} Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                                                            JUDGE

Arlene Singer, J.

                                       _____
Thomas J. Osowik, J.                                   JUDGE
CONCUR.

                                       _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.