OPINION
{¶ 1} Appellant, James Martin, appeals his misdemeanor convictions for using a sham legal process and dereliction of duty from the Trumbull County Court of Common Pleas. Upon review, we affirm in part and reverse in part the judgment of the trial court.
 {¶ 2} Appellant served as a police officer with the Howland Township Police Department from 1971 through 2004. He started as a patrolman and retired as a captain in 2004. He also served as the township's juvenile officer during the years 1975 through 1993. During that latter period he initiated a juvenile diversion program for the purpose, in his words "as a means of dealing with some juveniles that for whatever reason we didn't want to cite into court that were amenable to behavior changes."
 {¶ 3} This juvenile diversion program had no official status and was not sanctioned by any court or agency. The program was appellant's program and was run solely by him.
 {¶ 4} While appellant's program was in existence in Howland Township, youthful offenders were "diverted" from the court system with appellant's intervention. If, for example, a juvenile were cited for speeding, and appellant determined that the juvenile would benefit from the structure and discipline of his program, appellant would meet with the juvenile's parents and obtain their consent to their child being admitted to the program. The program would be explained to them in terms of the rules to be obeyed by the juvenile and the punishment and other sanctions to be administered. The sanctions might include community service obligations in Howland Township, such as washing fire engines for the township. Typically, the punishment would consist of a certain number of "swats", that is, paddling the juveniles. The number of "swats" would depend on the severity of the offense. The "swats" were administered at the regular weekly appointment when the juvenile would report to appellant on his law-abiding activities and progress in school. However, if the juvenile broke the rules while a participant in the program, he might receive additional "swats." In all events, appellant was the sole arbiter of a juvenile's eligibility for his diversion program, as well as the extent and severity of the punishment and sanctions to be administered.
 {¶ 5} This aspect of corporal punishment was brought to the attention of the Trumbull County Children Services Board ("Board") in 1992. A parent of one of the juveniles complained about the "swats." The Board investigated the matter for child abuse and concluded that child abuse was not substantiated. It also recommended that the "swats" stop immediately, though appellant ignored this recommendation.
 {¶ 6} In February 1993, soon after Chief Lamantia was installed as the new police chief of Howland Township, appellant was ordered by the new chief to terminate his juvenile diversion program, and he complied.
 {¶ 7} In 1997, while still continuing as a police officer in Howland Township, appellant was hired as the part-time police chief in Fowler Township.
 {¶ 8} Appellant decided to restart his juvenile diversion program in Fowler Township. However, his program managed juveniles from both Howland and Fowler Townships in the Fowler Township premises. In the meantime, Howland Township had started its own officially sanctioned diversion program that was approved by the trustees and administered by a diversion officer. In addition, during this time the Trumbull County Juvenile Court also operated its own diversion program, but appellant did not participate in the juvenile court's program.
 {¶ 9} For the Fowler Township diversion program, appellant created written guidelines and policies for his diversion program, as well as a separate list of seventeen rules each participant had to follow while in the program.
 {¶ 10} For both the Howland Township and the Fowler Township diversion programs, appellant created records relating to each participant's program. The records consisted of files touching on the participant's progress in the program, as well as the punishments and sanctions that were administered, including the number of "swats" per session. In addition, appellant videotaped the sessions where the "swats" were administered.
 {¶ 11} At trial, twelve of the participants in appellant's program testified concerning their experiences in the program. Eleven of those participants received various numbers of "swats." The offenses committed by the participants ranged from an unruly child complaint involving domestic violence; criminal damaging with a BB gun; speeding; reckless operation and fleeing; shoplifting; fighting on school property; and possession of drugs. All of the offenses were committed in 2002 and 2003. Appellant was not the arresting officer in all cases. Some cases were referred to him by other Fowler Township police officers. Some of the offenses were committed in Howland Township, but in all cases the diversion program participants were sent to Fowler Township for completion of their diversion program.
 {¶ 12} On March 26, 2004, a search warrant was executed at appellant's home. Records relating to appellant's administration of his diversion program in Howland Township from 1975 through 1992 were seized at that time. Also seized were two computer floppy disks that contained video clips of spankings, a Howland Township incident report dated August 2, 2001, relating to an attempted auto theft as well as records pertaining to the juveniles arrested in 2002 and 2003, who participated in the Fowler Township diversion program.
 {¶ 13} On May 5, 2004, appellant was indicted by the grand jury on fifty-two counts, consisting of fifty misdemeanor counts and two felony counts. Twenty of the misdemeanor counts charged him with dereliction of duty, violations of R.C. 2921.44(E) and (F), misdemeanors of the second degree. Eleven misdemeanor counts charged appellant with assault, violations of R.C. 2903.13(A) and (C), misdemeanors of the first degree. Seven misdemeanor counts charged him with unauthorized photography, violations of R.C.2151.313(D)(1) and 2151.99(A), misdemeanors of the fourth degree. Twelve misdemeanor counts charged appellant with using a sham legal process, violations of R.C. 2921.52(B)(3) and (D), misdemeanors of the first degree. Two felony counts charged him with theft in office, violations of R.C. 2921.41(A)(2) and (B), felonies of the fifth degree. Appellant entered a plea of not guilty to all counts.
 {¶ 14} The dereliction of duty counts had three different aspects. Some of the counts related to appellant's failure to abide by Traffic Rule 3(E), which provides, in part:
 {¶ 15} "[a] law enforcement officer who issues a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon defendant, and, without unnecessary delay, file the court copy with the court."
 {¶ 16} The second aspect of some of the dereliction of duty counts related to the creation of the diversion program, which the state of Ohio contended was forbidden by R.C. 2935.36, reads in relevant part:
 {¶ 17} "[t]he prosecuting attorney may establish pre-trial diversion programs for adults who are accused of committing criminal offenses and whom the prosecuting attorney believes probably will not offend again. * * * The programs shall be operated pursuant to written standards approved by journal entry by the presiding judge or, in courts with only one judge, the judge of the court of common pleas[.]"
 {¶ 18} The third aspect of the remaining dereliction of duty counts related to violations of duty imposed by the Ohio statute governing public records, R.C. 149.43(B)(1), which reads in relevant part:
 {¶ 19} "[* * *] all public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * * In order to facilitate broader access to public records, public offices shall maintain public records in a manner that they can be made available for inspection in accordance with this division."
 {¶ 20} Following the impaneling of the jury, the state of Ohio moved to dismiss sixteen of the fifty-two counts on the ground that they were duplicative. The trial court granted this motion. Trial was had on the remaining counts, which were renumbered and consisted of twelve dereliction of duty counts, eleven assault counts, twelve counts of using a sham legal process, and one count of theft in office.
 {¶ 21} The jury found appellant guilty of twelve counts of using a sham legal process and six counts of dereliction of duty. Appellant was found not guilty on ten of the assault counts, six of the dereliction of duty counts, and the theft in office count. The jury deadlocked on one of the assault counts.
 {¶ 22} At sentencing, the trial court sentenced appellant to six months in jail. The trial court did not specify the convictions to which the jail sentence related. The jail time was suspended. In addition, appellant was put on community control sanction for two years and ordered to pay a $500 fine and costs, as well as perform one hundred twenty hours of community service. Appellant timely appealed his convictions and presents two assignments of error for our review:
 {¶ 23} "[1.] [Appellant] may not lawfully be convicted of using a sham legal process to knowingly commit or facilitate the commission of the offense of assault, in violation of R.C.2921.52(B)(3), when he is simultaneously found not guilty of the specific offense of assault.
 {¶ 24} "[2.] All of the dereliction of duty convictions against [appellant] are against the weight of the evidence, are not supported by sufficient evidence, and it was error for the trial court to overrule [appellant's] motions to dismiss and to overrule his Crim.R. 29 motion."
 {¶ 25} Under his first assignment of error, though not so specifically labeled, his argument is predicated on the theory of inconsistent verdicts. He contends that it was inconsistent for the jury to find him guilty of using a sham legal process to commit the offense of assault and, at the same time, find him not guilty of assault. We do not agree.
 {¶ 26} In United States v. Powell, the United States Supreme Court stated that "`[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.'" United States v. Powell (1984),469 U.S. 57, 62, quoting Dunn v. United States (1932), 284 U.S. 390,393.
 {¶ 27} In State v. Adams, the Supreme Court of Ohio stated the general rule regarding inconsistent verdicts:
 {¶ 28} "[t]he general rule as to inconsistency in a verdict as between different counts of an indictment is (* * *) that `consistency between the verdicts on the several counts of an indictment * * * is unnecessary where defendant is convicted on one or some counts but acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal.'" State v. Adams (1978), 53 Ohio St.2d 223, 228, quoting Annotation (1968), 18 A.L.R.3d 259, 274, Section II-A-3.
 {¶ 29} In the Adams case, that court held that counts in a multi-count indictment are not interdependent, and that inconsistency exists only where the jury responds inconsistently to one count, not to different counts:
 {¶ 30} "`(t)he several counts of an indictment containing more than one count are not interdependent. A verdict responding to a designated count will be construed in the light of the count designated, and no other. An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.'" Statev. Adams, supra, at 228, quoting Browning v. State (1929), 120 Ohio St. 62, paragraph four of the syllabus.
 {¶ 31} This court, in the case of State v. Toward, held that a jury verdict was not inconsistent where the defendant was acquitted of corruption of a minor and sexual battery, and yet was convicted of the remaining count of sexual battery. State v.Toward (Dec. 5, 1986), 11th Dist. No. 1270, 1986 WL 14343, at 2. See, also, State v. Kirk (May 8, 1992), 11th Dist. No. 91-A-1663, 1992 Ohio App. LEXIS 2322. This court based its holding on the fact that the trial court in the Toward case gave the jury an instruction identical to the one given in this case:
 {¶ 32} "`[t]he charges set forth in each count in the indictment constitutes a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses charged.'" Toward, supra, at 2.
 {¶ 33} In this case, appellant was found guilty of twelve counts of using a sham legal process. These counts stood independently of the assault counts. They were not interdependent. Thus, the jury's verdicts of guilty on the counts of using a sham legal process were not inconsistent with its verdicts of not guilty on the assault counts.
 {¶ 34} In appellant's brief, and also at oral argument, he argued that there was not sufficient evidence to convict him of using a sham legal process. Therefore, we shall conduct a sufficiency of the evidence analysis on this issue.
 {¶ 35} "`"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim ofinsufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *" * * *'
 {¶ 36} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14. (Citations omitted and emphasis in original).
 {¶ 37} Thus, "[a]n appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. Clark, 11th Dist. No. 2002-A-0056,2003-Ohio-6689, at ¶ 16. (Citations omitted).
 {¶ 38} Moreover, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the [jury]." State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 39} The counts in the indictment charging appellant with using a sham legal process were entered against him under R.C.2921.52(B)(3), which states: "[n]o person shall, knowing the sham legal process to be sham legal process * * * [k]nowingly commit or facilitate the commission of an offense, using sham legal process[.]"
 {¶ 40} "Sham legal process" is defined by R.C. 2921.52(A)(4) as: "[a]n instrument that meets all of the following conditions:
 {¶ 41} "(a) It is not lawfully issued.
 {¶ 42} "(b) It purports to do any of the following:
 {¶ 43} "(i) To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body.
 {¶ 44} "(ii) To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers, or privileges of any person or property.
 {¶ 45} "(iii) To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property.
 {¶ 46} "(c) It is designated to make another person believe that it is lawfully issued."
 {¶ 47} To paraphrase the statute and to apply it to the instant case, appellant cannot be convicted of using a sham legal process without proof beyond a reasonable doubt that appellant knowingly and unlawfully issued an "instrument" that purported to be an order of a law enforcement officer; that was used to commit or facilitate the commission of an offense while using a sham legal process; and that was designated to make another person believe that it was lawfully issued.
 {¶ 48} In the counts of the indictment charging him with the crime of using a sham legal process, appellant is alleged to have done the following:
 {¶ 49} "[Appellant] did, knowing the sham legal process to be sham legal process, knowingly commit or facilitate the commission of an offense, using sham legal process, to-wit: presented an `Alternative Sentencing Juvenile Information Report' and `probation orders' to [a juvenile] and his parent; said report not being lawfully issued (although designed to appear lawful), purporting to assert jurisdiction over and to authorize sentencing of [a juvenile] and being drafted on [appellant's] home computer, in violation of Section 2921.52(B)(3) (D) of the Ohio Revised Code, and against the peace and dignity of the State of Ohio."
 {¶ 50} Appellant did not challenge the indictment on the using sham legal process counts, though he unsuccessfully challenged the indictment on the dereliction of duty counts. However, we observe it significant that appellant was charged under subsection (B)(3) of the statute, and not under subsection (B)(1), which reads as follows:
 {¶ 51} "(B) No person shall, knowing the sham legal process to be sham legal process, do any of the following:
 {¶ 52} "(1) Knowingly issue, display, deliver, distribute, or otherwise use sham legal process[.]"
 {¶ 53} The difference between the two subsections, (B)(1) and (B)(3), is that under subsection (B)(1), the offense is complete if one "knowingly * * * use[s] sham legal process," while under subsection (B)(3), the offense is complete only where one "knowingly commit[s] or facilitate[s] the commission of an offense, using sham legal process."
 {¶ 54} In subsection (B)(3), the placement of the comma before the phrase "using sham legal process" has the effect of making that phrase modify the previous phrase, which is "knowingly commit or facilitate the commission of an offense." Therefore, under subsection (B)(3), not only must one "use sham legal process," but he must do it while "committing or facilitating the commission of an offense."
 {¶ 55} Appellant and the state of Ohio had two different views of the "offense" that appellant was committing under subsection (B)(3).
 {¶ 56} Appellant argued in the trial court and in this court that the "offense" he was alleged to have committed while using a sham legal process was the offense of assault. Therefore, appellant alleged that, because he was acquitted of assault, he was not guilty of committing an "offense" for purposes of subsection (B)(3), and therefore, an element of the crime of using a sham legal process was lacking. He filed a motion for a new trial on this ground, but his motion was overruled by the trial court.
 {¶ 57} As discussed above, the state of Ohio construed appellant's argument to mean that there could not be inconsistent verdicts.
 {¶ 58} Moreover, the state of Ohio indicted appellant under subsection (B)(3) of the statute, instead of subsection (B)(1), and prosecuted him as if the "offense" he was "committing" or "facilitating" was the offense of "using a sham legal process." However, giving subsection (B)(3) of the statute its plain meaning, the statute requires more than "using a sham legal process;" it also requires that one "commit or facilitate the commission of an offense," and, in so doing, "uses a sham legal process." Therefore, it is not enough to convict one under subsection (B)(3) by proving that one was "using a sham legal process." It must also be proven that one was "committing or facilitating the commission of an offense" while "using a sham legal process."
 {¶ 59} From a sufficiency of the evidence standpoint, the state of Ohio failed to prove that appellant was committing or facilitating an offense while using a sham legal process in order to be convicted under subsection (B)(3) of the statute. The jury found that he was not committing assault, and the state of Ohio did not seek to prove that he was committing some other offense.
 {¶ 60} Even if we were to consider that the "offense" that appellant was committing while using a sham legal process was the offense of dereliction of duty, this argument would also not have legal support. As will be seen in the subsequent discussion, appellant was convicted on four counts of dereliction of duty as they relate to the diversion program that he created, but for reasons discussed in the subsequent assignment of error, we are reversing the convictions on three of those four charges. As for the other charge, having to do with failing to promptly file a traffic citation, in violation of Traffic Rule 3(E), this charge did not involve the use of a sham legal process, and, therefore, that element is lacking for purposes of subsection (B)(3) of R.C.2921.52. Therefore, dereliction of duty similarly does not provide a basis to satisfy the other element under (B)(3) regarding "the commission of an offense" by appellant while using a sham legal process.
 {¶ 61} Thus, we conclude that there was insufficient evidence to convict appellant for using a sham legal process where the subsection of the statute under which he was charged required proof that he was committing or facilitating the commission of an offense while using a sham legal process. It was not enough to prove that he was using a sham legal process.
 {¶ 62} For the reasons indicated, the first assignment of error has merit.
 {¶ 63} Appellant's second assignment of error is as follows:
 {¶ 64} "All of the dereliction of duty convictions against [appellant] are against the manifest weight of the evidence, are not supported by sufficient evidence, and it was error for the trial court to overrule [appellant's] motions to dismiss and to overrule his Crim.R. 29 motion."
 {¶ 65} Under his second assignment of error, appellant contends that his convictions for dereliction of duty are against the manifest weight of the evidence, are not supported by sufficient evidence, and that it was error for the trial court not to have granted his motion to dismiss and Crim.R. 29 motion.
 {¶ 66} Appellant was convicted of six counts of dereliction of duty.
 {¶ 67} R.C. 2921.44(E) provides that "[n]o public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office."
 {¶ 68} R.C. 2921.44(F) provides that "[w]hoever violates this section is guilty of dereliction of duty, a misdemeanor of the second degree."
 {¶ 69} Appellant has presented four separate arguments under this assignment of error, three of which relate to the sufficiency of the evidence, and one of which relates to the manifest weight of the evidence.
 {¶ 70} Appellant's three arguments relating to the sufficiency of the evidence are that his pretrial motion to dismiss the dereliction of duty counts should have been granted by the trial court; his Crim.R. 29 motions for acquittal made at the conclusion of the state's evidence, and again at the conclusion of the trial, should have been granted; and that the evidence was insufficient to convict him. In all three arguments, appellant states the same proposition, namely that the charges fail to state an offense against him, and all three arguments test the sufficiency of the evidence against him. We shall consider all three of these arguments pursuant to a sufficiency of evidence analysis. The legal standard for a sufficiency of evidence analysis has previously been discussed in the first assignment of error.
 {¶ 71} Thus, in the instant case, the state was required to present sufficient evidence to establish that appellant recklessly failed to perform a duty expressly imposed by law, or that he recklessly performed an act expressly forbidden to his office as a policeman.
 {¶ 72} The three bases offered by the state of Ohio to support the dereliction of duty convictions are that appellant violated Traffic R. 3(E) by failing to promptly file a traffic ticket for Michael Harrington with the clerk of court; that appellant violated R.C. 2935.36 by establishing a diversion program that could only be established by a prosecuting attorney; and that he violated an open records law by keeping his diversion program records at his home instead of at the police station.
 {¶ 73} Appellant relies on the case of State v. Gaul from the Eighth Appellate District to support his argument that he did not commit a dereliction of duty with respect to any of the three bases described.
 {¶ 74} In State v. Gaul, the Eighth Appellate District reversed a conviction against a county treasurer charged with dereliction of duty, where the county treasurer mismanaged public funds and made imprudent investments. State v. Gaul (1997), 117 Ohio App.3d 839.
 {¶ 75} In the Gaul case, the state of Ohio had prosecuted the county treasurer for dereliction of duty on three different bases: that he violated his fiduciary duty to safeguard public funds; that he failed to properly monitor his deputies; and that he failed to maintain and properly manage documents evidencing the county's investments.
 {¶ 76} With respect to the first basis, the court held the fiduciary duty to preserve public monies was merely implied, not expressed, by applicable law:
 {¶ 77} "[t]hese fiduciary duties to preserve public moneys cannot serve as the basis of a criminal charge for dereliction of duty under R.C. 2921.44(E) because they are merely implied in the general grant of authority to make the investments in R.C.135.35(A). R.C. 2921.44(E) requires the underlying statute toexpressly impose a duty upon the accused; an implied duty is therefore insufficient to support a charge of dereliction of duty." Id. at 852. (Emphasis in original).
 {¶ 78} With respect to the second basis, failure to properly monitor his deputies, the court likewise concluded that no express duty was violated:
 {¶ 79} "[l]ike the preceding statute, R.C. 321.04 [providing that the county treasurer is `liable and accountable' for the misdeeds of his subordinates] does not expressly require the treasurer to do anything. There is no duty explicitly imposed such that the treasurer may be prosecuted under R.C. 2921.44(E) for failing to do what he was instructed to do. Without such an explicit directive in the text of R.C. 321.04, that statute cannot serve as the basis for a charge of criminal dereliction of an express duty imposed by law." Id. at 853.
 {¶ 80} Finally, that court rejected the third and final basis for a dereliction of duty charge, having to do with document management. On this score, the court held that the statute that provided that the county treasurer "shall be responsible for the safekeeping of all documents evidencing a deposit or investment" did not expressly impose a duty to maintain such records: "[a]s R.C. 135.35(D) does not expressly impose a duty to `maintain records,' this statute cannot support the notion that [the county treasurer] should be criminally liable for inadequate record-keeping." Id.
 {¶ 81} The case of State v. Gaul does support appellant's position that an express statutory mandate is required for one to be convicted of dereliction of duty. Beyond that, however, we do not believe that Gaul can be further extended by appellant to lend support to his argument.
 {¶ 82} A case similar to the instant case is State v.Carrozza, in which a village police chief was prosecuted for dereliction of duty for advising the mayor of the village to tear up a speeding ticket and substitute in its place a minor misdemeanor citation. State v. Carrozza (Nov. 23, 1998), 12th Dist. No. CA97-11-029, 1998 Ohio App. LEXIS 5546. The state of Ohio relied on three sections of the traffic rules, especially Traffic R. 15(B):
 {¶ 83} "[a]ny person who disposes of a ticket, or who solicits or knowingly aids in the disposition of a ticket in any manner other than that authorized by these rules may be proceeded against for criminal contempt in the manner provided by law."
 {¶ 84} The Twelfth Appellate District held that the act committed by the village police chief did not amount to a reckless dereliction of duty imposed on the police chief, or expressly forbidden to him. Id. at 6-7. That court further explained its decision by stating that the traffic rules in question did not expressly require a village police chief to do anything with respect to his office:
 {¶ 85} "[a]ppellant's conviction can only be sustained if appellant recklessly failed to perform a duty expressly imposed by law with respect to his office. The Traffic Rules in question do not expressly require a village chief of police to do or refrain from doing anything with respect to his office." Id. at 8.
 {¶ 86} Appellant's case is different from that of the defendant in Carrozza for two reasons. First, appellant is charged with dereliction of duty with respect to Traffic Rule 3(E); and secondly, unlike Traffic Rule 15, the phrase "law enforcement officer" has specific application to appellant. Even though the Twelfth Appellate District determined that Traffic Rule 15 did not contain an express duty for Carozza as a police chief, we conclude that Traffic Rule 3(E) does contain such an express duty with respect to a law enforcement officer, of which appellant was one.
 {¶ 87} Pursuant to Traffic Rule 3(E), after appellant issued the traffic ticket to Harrington, he, as a "law enforcement officer," was required "without unnecessary delay, [to] file the court copy with the court." At trial, appellant admitted that he pulled that ticket. Further, when appellant was asked by the prosecutor on cross-examination whether he ever filed Harrington's traffic ticket with the court, appellant replied, "No, I didn't." Thus, appellant admits that he violated his duty under Traffic Rule 3(E) to promptly file Harrington's traffic ticket with the clerk of courts.
 {¶ 88} No competing testimonial input appears in the record, and, thus, there is no real credibility issue with regard to this portion of appellant's argument under the second assignment of error.
 {¶ 89} Consequently, the trial court's ultimate ruling on this specific issue is not against the manifest weight of the evidence.
 {¶ 90} The evidence further supports the conclusion that his conduct in failing to file the ticket with the court was "reckless."
 {¶ 91} R.C. 2901.22(C) defines reckless conduct:
 {¶ 92} "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 93} As a law enforcement officer, appellant knew what the consequences of failing to file the traffic ticket with the clerk of courts would be, yet, acting with heedless indifference to the consequences of his action and with a perverse disregard for the results of his action, appellant nevertheless failed to file the ticket. Thus, his conduct was reckless.
 {¶ 94} Therefore, we affirm the dereliction of duty conviction against appellant as it relates to his failure to file the Harrington traffic ticket with the court.
 {¶ 95} With regard to the other convictions for dereliction of duty, dealing with the creation and operation of a diversion program and the failure to maintain public records in a public place, it is our view that appellant did not violate any express duty imposed by law with respect to his office, nor did he commit any act expressly forbidden involving his office.
 {¶ 96} We shall first consider the dereliction of duty convictions dealing with the creation and operation of a diversion program.
 {¶ 97} Specifically, R.C. 2935.36, governing the establishment of a diversion program by a prosecuting attorney, does not itself impose an express duty on appellant to refrain from creating a diversion program. Other sanctions might have been available to his employer for doing so, such as termination, suspension, or other discipline, but a conviction under R.C.2921.44(E) requires the reckless failure to perform an act which was required of him, or the commission of an act expressly forbidden to his office or position. No such express provision exists in R.C. 2935.36 that would form the basis for a prosecution for dereliction of duty. Therefore, the dereliction of duty convictions with respect to the creation and operation of a diversion program cannot be sustained.
 {¶ 98} We next consider the dereliction of duty conviction that relates to appellant's keeping records at his home from the Howland Township diversion program that he ran between 1975 and 1992.
 {¶ 99} In this context, the open records statute that the state of Ohio used as a basis to prosecute appellant does not impose an express duty on him to do anything. R.C. 149.43(B)(1) requires that "public offices" maintain records, which is not the same as imposing a duty on appellant to maintain records of his police activity. Thus, there is no express duty imposed on appellant in this statute that he recklessly failed to perform.
 {¶ 100} Of equal significance is the fact that the Howland Township records of appellant's diversion program that he ran from 1975 through 1992 are not "public records" as that term is defined under Ohio law.
 {¶ 101} R.C. 149.43(A)(1) defines a "public record", in pertinent part, as follows:
 {¶ 102} "(A) As used in this section:
 {¶ 103} "(1) `Public record' means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units[.]"
 {¶ 104} Further, R.C. 149.011(G) defines "records" as follows:
 {¶ 105} "`records' includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."
 {¶ 106} Inasmuch as the records of the diversion program in Howland Township from 1975 through 1992 were created by appellant on his own initiative and without any authorization or direction of any Howland Township official, they were not "kept" by the township as official records. They were appellant's records of his own unauthorized diversion program.
 {¶ 107} The testimony of the former chief of police of Howland Township confirmed that the records in question were not "public records." The former chief testified that, at the direction of the township trustees who did not authorize appellant's diversion program, he told appellant to stop his diversion program on February 9, 1993. Only later did the chief learn that any written records pertaining to the diversion program existed, and that appellant kept the records at his home.
 {¶ 108} Therefore, appellant's conviction for dereliction of duty for keeping records of his diversion program at his home cannot be sustained because the records in question were not public records, and because appellant did not violate any express duty to maintain the records, or commit any act in connection therewith that was forbidden to his office.
 {¶ 109} With respect to the Howland Township incident report dated August 2, 2001, which was seized pursuant to a search warrant, appellant was acquitted of the dereliction of duty count relating to this record. Therefore, whether this incident report was a public record is not before us in this review.
 {¶ 110} The second assignment of error is with merit to the extent indicated.
 {¶ 111} The judgment of the Trumbull County Court of Common Pleas is affirmed with respect to appellant's conviction for dereliction of duty insofar as it relates to his failure to abide by Traffic Rule 3(E). The other convictions for using a sham legal process and for dereliction of duty are reversed. The trial court did not specify the convictions to which the six months' jail sentence related. For that reason, this matter is remanded to the trial court for resentencing on the dereliction of duty conviction relating to failure to file a traffic citation pursuant to Traffic Rule 3(E).
O'Neill, J., Grendell, J., concur.