[Cite as *State v. Krause*, 2021-Ohio-3657.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

  - v -

NICHOLAS R. KRAUSE,

        Defendant-Appellant.

CASE NO. 2021-L-019

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 000696

**O P I N I O N**

Decided: October 12, 2021
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1}   Appellant, Nicholas R. Krause ("Mr. Krause"), appeals from the judgment of the Lake County Court of Common Pleas convicting him of domestic violence, two counts of violating a protection order, and unauthorized use of a vehicle following a bench trial.

{¶2}   Mr. Krause asserts two assignments of error, contending that the trial court erred by (1) returning guilty verdicts against the manifest weight of the evidence and (2) denying his motion for acquittal pursuant to Crim.R. 29(A).

{¶3} After a careful review of the record and pertinent law, we find Mr. Krause's assignments of error to be without merit. First, Mr. Krause has not established the insufficiency of the state's evidence with respect to domestic violence, the felony offense of violating a protection order, or unauthorized use of a vehicle. Second, Mr. Krause has not established that the trial court clearly lost its way or created a manifest miscarriage of justice in finding him guilty of domestic violence, both counts of violating a protection order, or unauthorized use of a vehicle.

{¶4} Thus, we affirm the judgment of the Lake County Court of Common Pleas.

## Substantive and Procedural History

{¶5} This case involves a domestic dispute between Mr. Krause and his then-wife, Emily Rosipko ("Ms. Rosipko").

{¶6} Mr. Krause and Ms. Rosipko were married in August 2017. Following the marriage, the couple lived together for brief periods of time in Cleveland. In September 2019, their daughter was born. In December 2019, the couple separated. Ms. Rosipko moved to her mother's house in Chardon and later to her own apartment in Painesville.

{¶7} In May 2020, Ms. Rosipko obtained a protection order against Mr. Krause in the Lake County Court of Common Pleas. The order prohibited Mr. Krause from, among other things, entering Ms. Rosipko's residence; being present within 500 feet of Ms. Rosipko and their daughter; and initiating or having any contact with them. The order specifically prohibited Mr. Krause from engaging in the foregoing acts "even with the permission of a protected person." The order also prohibited Mr. Krause from removing any property that Ms. Rosipko owned or possessed. It permitted Mr. Krause to be in Ms.

2

Rosipko's presence "for all domestic relations proceedings, hearings and meetings related to a divorce and/or dissolution action filed by either or both parties."

{¶8} While the couple was separated, Ms. Rosipko became pregnant as a result of another relationship. At the end of May 2020, Mr. Krause called Ms. Rosipko to mend their relationship and offered to help parent the new child after its birth. In early July 2020, Mr. Krause began residing at Ms. Rosipko's apartment in Painesville.

### The Alleged Offenses

{¶9} On the evening of July 18, 2020, Ms. Rosipko arrived home from work. Mr. Krause was present at the apartment with their daughter. At some point, Ms. Rosipko and Mr. Krause engaged in a heated argument about the cleanliness of the apartment. Ms. Rosipko decided to shut herself in her bedroom to allow the situation to cool off. About an hour later, around 8:00 p.m., Ms. Rosipko came out of her bedroom and discovered that Mr. Krause had left the residence with her car keys and her vehicle.

{¶10} Ms. Rosipko had purchased the vehicle during the marriage but was the sole titled owner. According to Ms. Rosipko, there were "trust issues" in their marriage. Therefore, she permitted Mr. Krause to drive her vehicle to work and under certain circumstances as long as he informed her when he arrived at his destination.

{¶11} Ms. Rosipko began "frantically" calling Mr. Krause and others in an attempt to locate her vehicle. Around 1:00 a.m., Mr. Krause finally answered. He told her that he was at a party, had been drinking, and would not be back with her vehicle. Ms. Rosipko's only car seat for their daughter was located in the vehicle, and she needed it to take the child to the babysitter before going to work the next day. Once Ms. Rosipko threatened to call the police to the party, Mr. Krause told her that he was on his way.

3

Case No. 2021-L-019

{¶12} When Mr. Krause arrived at the apartment complex, Ms. Rosipko went outside and met him at the driver's side window. While Mr. Krause was sitting inside the vehicle, they began arguing because Ms. Rosipko refused to take Mr. Krause to a hotel at that time of night.

{¶13} Mr. Krause attempted to get out of the vehicle. Since Ms. Rosipko was standing close by, Mr. Krause struck her with the driver's side door and was not able to exit. Ms. Rosipko was shoved backwards slightly but was not knocked off her feet. She described the impact as being greater than "a tap" but not "hard" or "painful." Mr. Krause climbed over the passenger side, threw the car keys on the driver's seat, and jumped out of the passenger side window.

{¶14} Mr. Krause had previously told Ms. Rosipko that he had possession of her spare car key. To prevent Mr. Krause from taking her vehicle again, Ms. Rosipko unlatched the vehicle hood to unplug the battery. As she walked toward the hood, Mr. Krause realized what she was doing and closed the hood. When Ms. Rosipko again attempted to unlatch the hood, Mr. Krause jumped over the hood to get to the driver's side and shoved Ms. Rosipko out of the way. Ms. Rosipko described it as being a "hard shove" that caused her to stumble backward.

{¶15} Mr. Krause climbed through the driver's side window and started the car. Ms. Rosipko became "frantic" and approached the driver's side door. Mr. Krause backed the car up rapidly, at which time Ms. Rosipko was struck by the driver's side mirror and the front panel of the vehicle and fell to the ground. As he shifted gears, Mr. Krause observed Ms. Rosipko lying on the ground and drove away.

4

Case No. 2021-L-019

{¶16} Ms. Rosipko called her friend and her mother, who both advised her to call the police. Ms. Rosipko called 911 to report the event and went upstairs to check on her daughter.

{¶17} Two officers from the Painesville Police Department responded to the call and spoke with Ms. Rosipko. She was visibly upset and had observable injuries, including cuts on her knees as well as bruising and road rash along the back of her left thigh. The officers obtained a written statement from Ms. Rosipko, took photos of her injuries, and reported the vehicle as stolen. Shortly thereafter, Mr. Krause was located and arrested.

{¶18} In the following days, Ms. Rosipko experienced pain on the side of her body where the driver's side mirror had struck her. She attempted to call off work the day after the incident and was sent home when she could not perform her duties.

### Indictment

{¶19} In September 2020, the Lake County Grand Jury indicted Mr. Krause on the following five counts: felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) (count 1); domestic violence, a felony of the fifth degree, in violation of R.C. 2919.25(A), including an allegation that Mr. Krause knew Ms. Rosipko was pregnant at the time of the offense (count 2); violating a protection order, a felony of the third degree, in violation of R.C. 2919.27(A)(1), including an allegation that Mr. Krause violated the protection order while committing a felony offense, i.e., felonious assault and/or domestic violence (count 3); violating a protection order, a misdemeanor of the first degree, in violation of R.C. 2919.27(A)(1) (count 4); and unauthorized use of a vehicle, a misdemeanor of the first degree, in violation of R.C. 2913.03(A) (count 5).

{¶20} Mr. Krause pleaded not guilty to the charges.

5

Case No. 2021-L-019

*Bench Trial*

{¶21} Mr. Krause waived his right to a jury trial, and the case was tried to the bench.

{¶22} The state presented testimony from the 911 dispatcher, Ms. Rosipko, and one of the investigating police officers. The state also presented certified copies of documents relating to Ms. Rosipko's protection order, a certified copy of Ms. Rosipko's vehicle title, maps of the scene, and photos of Ms. Rosipko's injuries.

{¶23} Following the state's presentation of its case-in-chief, the defense moved for acquittal pursuant to Crim.R. 29. The trial court heard argument from counsel and overruled the defense's motion.

{¶24} Mr. Krause waived his right to testify, and the defense rested without presenting evidence. The defense renewed its motion for acquittal pursuant to Crim.R. 29, which the trial court again overruled.

{¶25} Prior to closing arguments, the trial court stated that it was interested in hearing about "knowingly" and whether the basis for the domestic violence charge was Mr. Krause's alleged attempt to exit through the driver's side door while Ms. Rosipko was standing outside of it.

{¶26} Following closing arguments and a recess, the trial court delivered its verdicts, finding Mr. Krause not guilty of felonious assault (count 1) and guilty of domestic violence (count 2), both counts of violating a protection order (counts 3 and 4), and unauthorized use of a vehicle (count 5). The trial court made additional findings under count 2 that Ms. Rosipko was pregnant at the time of the offense and under count 3 that Mr. Krause violated the protection order while committing a felony offense of domestic

6

violence. The trial court referred the matter for a presentence report, a victim impact statement, and a psychological evaluation and scheduled a sentencing hearing.

*Sentencing*

{¶27} The trial court held a sentencing hearing and sentenced Mr. Krause to a mandatory prison term of nine months on count 2, a prison term of 24 months on count 3, and jail terms of 90 days on each of count 4 and 5. The trial court ordered the sentences to run concurrent, for an aggregate prison term of 24 months with credit for 162 days. The trial court subsequently filed a judgment entry memorializing its verdicts and Mr. Krause's sentences.

{¶28} Mr. Krause appealed and now presents the following two assignments of error:

{¶29} "[1.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶30} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."

{¶31} We review Mr. Krause's assignments of error in reverse order for ease of discussion.

**Sufficiency of the Evidence**

{¶32} In his second assignment of error, Mr. Krause contends that the trial court erred by denying his Crim.R. 29 motion for acquittal because the state failed to produce sufficient evidence to support his convictions for domestic violence (count 2), the felony offense of violating a protection order (count 3), and unauthorized use of a vehicle (count 5).

7

### *Standard of Review*

{¶**33**}  Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."  Thus, when a defendant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state.  *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶**34**}  ""[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990).  "In essence, sufficiency is a test of adequacy."  *Id.*

{¶**35**}  "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.*

{¶**36**}  When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief.  *Thompkins* at 387.  Rather, we decide whether, if

8

believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

### *Domestic Violence*

{¶37} Mr. Krause first challenges the sufficiency of the state's evidence to establish domestic violence (count 2).

{¶38} R.C. 2919.25(A) provides that "[n]o person shall *knowingly* cause or attempt to cause *physical harm* to a family or household member." (Emphasis added.) The trial court made an additional finding that Mr. Krause knew Ms. Rosipko was pregnant at the time of the offense, which elevated the offense from a first-degree misdemeanor to a fifth-degree felony and mandated a prison term of at least six months. *See* R.C. 2919.25(D)(2), (5), and (6)(a).

{¶39} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). This court has held that the legal concept of "knowingly" incorporates the scienter requirement that one ought to know one's actions will "probably cause certain results." *State v. Magnusson*, 11th Dist. Lake No. 2006-L-263, 2007-Ohio-6010, ¶ 51.

{¶40} "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶41} Mr. Krause contends that he "committed no actions that would probably cause harm" to Ms. Rosipko. He does not dispute that Ms. Rosipko suffered physical injuries from being struck by the moving vehicle. However, he argues the trial court "made

9

it clear" by acquitting him of felonious assault that Mr. Krause did not "knowingly" cause these injuries.

{¶42} Based on this premise, Mr. Krause's sufficiency argument relates solely to the allegations that he hit Ms. Rosipko with the vehicle door and shoved her. Specifically, he contends that the evidence was insufficient to establish his "intention" to harm Ms. Rosipko and that such actions constituted "minor touching" that did not qualify as domestic violence.

{¶43} We disagree with the premise of Mr. Krause's argument. We acknowledge that prior to closing arguments, the trial court stated it was interested in hearing about "knowingly" and whether the domestic violence charge was based on Mr. Krause allegedly hitting Ms. Rosipko with the vehicle door when attempting to exit. We also acknowledge that during closing argument, the state contended that Mr. Krause committed domestic violence by hitting Ms. Rosipko with the vehicle door and shoving her, while he committed felonious assault by striking Ms. Rosipko with the moving vehicle.

{¶44} However, the Supreme Courts of the United States and Ohio have held that counts in a multi-count indictment are not interdependent. *State v. Martin*, 11th Dist. Trumbull No. 2005-T-0041, 2006-Ohio-6202, ¶ 29; *see United States v. Powell*, 469 U.S. 57, 62, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *State v. Adams*, 53 Ohio St.2d 223, 228, 374 N.E.2d 137 (1978). "'Each count in an indictment is regarded as if it was a separate indictment.'" *Powell* at 62, quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

{¶45} In addition, a trier of fact "is free to choose among reasonable constructions of the evidence presented in a criminal case." *Jenks*, *supra*, at 267. The verdict "must

10

be sustained if any reasonable construction of the evidence allowed the [fact finder] to find the [defendant] guilty beyond a reasonable doubt." *Id.* at 266.

{¶46} Thus, the trial court was free to consider all of the evidence presented at trial in relation to each of the charged offenses, including the evidence that Mr. Krause struck Ms. Rosipko with the moving vehicle to establish the domestic violence charge. The trial court was not required to accept the state's proposed application of the evidence in its closing argument.

{¶47} Further, the trial court issued a general verdict. *See* Crim.R. 23(C) ("In a case tried without a jury the court shall make a general finding"). There is nothing in the record establishing that the trial court acquitted Mr. Krause of felonious assault because the state did not establish that he "knowingly" caused Ms. Rosipko's injuries. Drawing this inference from the trial court's comments prior to closing arguments would be purely speculative.

{¶48} In fact, Mr. Krause's acquittal on the felonious assault charge did not necessarily encompass such a finding. As this court has previously recognized, the elements of felonious assault in violation of R.C. 2903.11(A)(2) and domestic violence in violation of R.C. 2919.25(A) are not the same. *See State v. Brown*, 11th Dist. Lake No. 2014-L-032, 2015-Ohio-950, ¶ 53.

{¶49} Specifically, R.C. 2903.11(A)(2) states, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn *by means of a deadly weapon * * *.*" (Emphasis added.) The term "deadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed

11

or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1); R.C. 2923.11(A).

{¶50} Courts have held that a vehicle may be classified as a "deadly weapon" when used in a manner likely to produce death or great bodily harm. *See State v. Belcher*, 6th Dist. Lucas Nos. L-13-1250 & L-13-1252, 2014-Ohio-5596, ¶ 29. The determination of whether a vehicle has been used in such a manner is a question of fact for the trier of fact. *Id.* The intent of the user, manner of use, and actions of the user are among the factors that must be examined. *Id.*

{¶51} Thus, the trial court's not guilty verdict on the felonious assault charge could have been based on the "deadly weapon" element of the offense.

{¶52} Since the premise of Mr. Krause's argument is incorrect, his sufficiency challenge to the domestic violence offense necessarily lacks merit.

### *Felony Offense of Violating a Protection Order*

{¶53} Mr. Krause next challenges the sufficiency of the state's evidence to establish the felony offense of violating a protection order (count 3).

{¶54} R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." The trial court made an additional finding that Mr. Krause violated the protection order while committing a felony offense of domestic violence, which elevated the offense from a first-degree misdemeanor to a third-degree felony. *See* R.C. 2919.27(B)(2) and (4).

12

Case No. 2021-L-019

{¶55} Mr. Krause contends that since the state did not present sufficient evidence to prove the domestic violence offense, the state necessarily did not present sufficient evidence to prove that he violated the protection order while committing a felony.

{¶56} As explained above, Mr. Krause has not established that the state's evidence was insufficient to establish domestic violence. Therefore, this argument necessarily lacks merit.

### *Unauthorized Use of a Vehicle*

{¶57} Finally, Mr. Krause challenges the sufficiency of the state's evidence to establish the offense of unauthorized use of a vehicle (count 5).

{¶58} R.C. 2913.03(A) provides, in relevant part, that "[n]o person shall knowingly use or operate [a] * * * motor vehicle * * * without the consent of the owner or person authorized to give consent." R.C. 2913.01(D) defines "owner" as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful."

{¶59} Mr. Krause contends that Ms. Rosipko purchased her vehicle during their marriage. Therefore, the vehicle constituted "marital property" pursuant to the definition set forth in R.C. 3105.171(A)(3)(a)(i), which includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" According to Mr. Krause, he could not be convicted of the unauthorized use of a vehicle in which he had an ownership interest.

{¶60} Mr. Krause's reliance on R.C. 3105.171 as granting him an ownership interest in Ms. Rosipko's vehicle is misplaced.

13

{¶61} R.C. Chapter 3105 governs matters relating to "divorce, alimony, annulment, [and] dissolution or marriage." R.C. 3105.171(B) provides, in relevant part, that "*[i]n divorce proceedings*, the court shall, and *in legal separation proceedings* upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." (Emphasis added.) The definitions of "marital property" and "separate property" for purposes of subsection (B) are set forth in R.C. 3105.171(A)(3) and (A)(6), respectively.

{¶62} By contrast, R.C. Chapter 3103 governs matters relating to spouses. R.C. 3103.07 provides that "[a] married person may take, hold, and dispose of property, real or personal, the same as if unmarried." R.C. 3103.04 provides that "[n]either husband nor wife has any interest in the property of the other, except as mentioned in section 3103.03 of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either." R.C. 3103.03(A) addresses a married person's obligation to support his or her spouse "out of the person's property or by the person's labor."

{¶63} Thus, marriage does not grant an individual an interest in his or her spouse's real or personal property except as statutorily granted for support, dower, or the right to remain in the mansion house after the death of the other. *State v. Garber*, 125 Ohio App.3d 615, 617, 709 N.E.2d 218 (9th Dist.1998); *State v. Tolbert*, 9th Dist. Summit No. 21203, 2003-Ohio-2160, ¶ 12.

{¶64} Based on the foregoing authority, Mr. Krause did not have an ownership interest in Ms. Rosipko's vehicle. The evidence at trial indicates that while Ms. Rosipko

14

purchased the vehicle during the marriage, she was the sole titled owner. Although Mr. Krause and Ms. Rosipko were separated at the time of the alleged offenses, Ms. Rosipko did not initiate divorce proceedings until shortly before trial. The possibility that the domestic relations court could subsequently determine that Ms. Rosipko's vehicle constituted "marital property" was irrelevant as to whether Mr. Krause could be convicted of unauthorized use of a vehicle under R.C. 2913.03(A). *See Garber* at 618; *Tolbert* at ¶ 13.

{¶65} Our conclusion is in accord with those of our sister districts that have considered this type of issue. For instance, the Eighth District Court of Appeals rejected a "marital property" argument in relation to the same charged offense and in the context of nearly identical facts. *See State v. Bilick*, 8th Dist. Cuyahoga No. 71238, 1997 WL 358282, *2 (June 26, 1997). Similarly, the Ninth District rejected "marital property" arguments in relation to the offenses of criminal damaging and receiving stolen property, both of which require the existence of "property of another." *See Garber* at 616-618; *Tolbert* at ¶ 10-13.

{¶66} Mr. Krause next contends that the evidence was insufficient to establish that he used or operated Ms. Rosipko's vehicle without her consent. According to Mr. Krause, he regularly drove the vehicle, and Ms. Rosipko testified that she was comfortable with him using it as long as she was aware of where he was going. At the time of the alleged offenses, Mr. Krause had the vehicle for several hours, and Ms. Rosipko did not call the police to report the vehicle stolen. Further, the protection order did not give Ms. Rosipko exclusive use of the vehicle.

15

{¶67} Ms. Rosipko testified that Mr. Krause took her vehicle without her permission on two separate occasions during July 18 and 19, which, if believed, was sufficient to establish that Mr. Krause violated R.C. 2913.03(A). Mr. Krause's argument raises potentially conflicting evidence, which relates to the weight of the evidence rather than its sufficiency.

{¶68} Mr. Krause's second assignment of error is without merit.

## Manifest Weight of the Evidence

{¶69} In his first assignment of error, Mr. Krause contends that the trial court's guilty verdicts were against the manifest weight of the evidence.

### Standard of Review

{¶70} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id*. "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶71} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d

16

652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

### Domestic Violence

**{¶72}** Mr. Krause first contends that the trial court clearly lost its way in finding him guilty of domestic violence (count 2).

**{¶73}** Similar to his sufficiency challenge, Mr. Krause contends that "[i]t is clear" from his acquittal for felonious assault that the trial court "did not believe" Mr. Krause "had the intent to harm [Ms.] Rosipko while operating the car." Thus, Mr. Krause's manifest weight argument relates solely to the allegations that he hit Ms. Rosipko with the vehicle door and shoved her.

**{¶74}** For the reasons explained above, we disagree with Mr. Krause's premise. The trial court was permitted to consider the evidence that Mr. Krause struck Ms. Rosipko with the moving vehicle in support of the domestic violence charge. Mr. Krause has not challenged the manifest weight of this evidence, and we will not construct an argument on his behalf.

### Violating a Protection Order

**{¶75}** Mr. Krause next contends that the trial court clearly lost its way in finding him guilty of violating a protection order (counts 3 and 4).

**{¶76}** Mr. Krause contends that he was permitted to be in Ms. Rosipko's presence on July 18 and 19 pursuant to the provision in the protection order referencing "domestic relations proceedings, hearings and meetings." Specifically, on July 18, they were in the

17

midst of trying to mend their relationship. On July 19, Mr. Krause was returning the car seat, which was a matter relating to their child.

{¶77} We disagree with Mr. Krause's characterization of the alleged incidents, as it does not accurately reflect the seriousness of his alleged conduct.

{¶78} In addition, there can be no dispute that Mr. Krause violated the protection order by being in the presence of Ms. Rosipko and their daughter on July 18 and 19. The events of those days may not reasonably be construed as "domestic relations proceedings, hearings and meetings related to a divorce and/or dissolution action filed by either or both parties." In fact, Ms. Rosipko had not yet initiated divorce proceedings at that time.

{¶79} While the evidence suggests Ms. Rosipko may have permitted Mr. Krause's presence at times, that fact would not affect Mr. Krause's culpability. According to the Supreme Court of Ohio, "the General Assembly has made the issue of an invitation entirely irrelevant as to the culpability of a respondent's violation of a protection order." *State v. Lucas*, 100 Ohio St.3d 1, 2003-Ohio-4778, 795 N.E.2d 642, ¶ 27. Further, the protection order in this case expressly stated that "the permission of a protected person" was not a valid excuse for a violation. *See State v Conklin*, 11th Dist. Geauga No. 2020-G-0242, 2021-Ohio-417, ¶ 58 ("[T]he very text of [appellant's] CSPO warned him against seeing the protected party – even with the protected party's permission").

{¶80} Thus, there is no basis for this court to conclude that the trial court clearly lost its way or created a manifest miscarriage of justice in finding Mr. Krause guilty of violating a protection order.

Case No. 2021-L-019

### *Unauthorized Use of a Vehicle*

{¶81} Finally, Mr. Krause contends that the trial court clearly lost its way in finding him guilty of unauthorized use of a vehicle (count 5).

{¶82} Mr. Krause has not developed an argument explaining how the trial court allegedly did so. *See* App.R. 16(A)(7). To the extent Mr. Krause is relying on the contentions set forth in his second assignment of error, they are without merit.

{¶83} As explained above, Mr. Krause did not have an ownership interest in Ms. Rosipko's vehicle. In addition, the potentially conflicting evidence on the issue of consent does not weigh heavily against his conviction.

{¶84} For instance, Mr. Krause states that he regularly drove the vehicle and that Ms. Rosipko testified she was comfortable with him using it as long as she was aware of where he was going. However, there was no testimony that Mr. Krause made Ms. Rosipko aware of where he was going prior to taking her vehicle on either July 18 or 19. Thus, the evidence does not indicate that Mr. Krause was operating the vehicle within the parameters of his permitted use.

{¶85} Mr. Krause next states that at the time of the alleged offenses, Mr. Krause had the vehicle for several hours, and Ms. Rosipko did not call the police to report the vehicle stolen.

{¶86} While Ms. Rosipko did not call the police on July 18, she testified that she "frantically" called Mr. Krause and others in an attempt to locate her vehicle. Mr. Krause did not agree to return her vehicle until she threatened to call the police to the party he was attending. In addition, Mr. Krause does not dispute that Ms. Rosipko was trying to

19

prevent him from taking her vehicle on July 19 or that the police subsequently reported it as stolen.

{¶87}  Finally, Mr. Krause notes that the protection order did not give Ms. Rosipko exclusive use of the vehicle.

{¶88}  While Mr. Krause's observation is accurate, the evidence regarding Mr. Krause's permitted use of the vehicle was in the form of Ms. Rosipko's testimony, which Mr. Krause does not dispute.  Further, we note that the protection order also expressly prohibited Mr. Krause from removing any property that Ms. Rosipko owned or possessed.

{¶89}  Thus, we conclude that the trial court did not clearly lose its way or create a manifest miscarriage of justice in finding Mr. Krause guilty of unauthorized use of a vehicle.

{¶90}  Mr. Krause's first assignment of error is without merit.

{¶91}  For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-L-019